UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| | ) | |
| **SHELIA GAYE REED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:18-CV-00066-NCC** |
| | ) | |
| **ANDREW M. SAUL,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Shelia Gaye Reed ("Plaintiff") for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*

and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C.

§§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 21), Defendant has

filed a brief in support of the Answer (Doc. 26), and Plaintiff has filed a reply brief (Doc. 29).

The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge

pursuant to Title 28 U.S.C. § 636(c) (Doc. 12).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on July 14, 2015 (Tr. 142-57). Plaintiff

was initially denied on November 18, 2015, and she filed a Request for Hearing before an

Administrative Law Judge ("ALJ") on December 17, 2015 (Tr. 81-82, 92). After a hearing, by

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

decision dated July 14, 2017, the ALJ found Plaintiff not disabled (Tr. 7-28). On May 22, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018, and that Plaintiff has not engaged in substantial gainful activity since October 30, 2013, the amended alleged onset date (Tr. 12). The ALJ found Plaintiff has the severe impairments of degenerative disc disease and pseudoarthrosis of the lumbar spine, degenerative disc disease of the cervical spine with spine curvature, osteoarthritis/degenerative joint disease of the right hip, and osteoarthritis/degenerative joint disease of the left hip status-post arthroplasty with prosthesis, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-17). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[2] with the following limitations (Tr. 18). She can lift or carry up to ten pounds occasionally and lift or carry less than ten pounds frequently (*Id.*). She can stand and/or walk for two hours out of an eight-hour workday and sit for six hours out of an eight-hour workday (*Id.*). She should never climb ladders, ropes, and scaffolds, and can occasionally climb ramps and stairs (*Id.*). She can occasionally balance, stoop, kneel, crouch, and crawl (*Id.*). She should never work at unprotected heights, with moving mechanical parts, or in vibration (*Id.*). The ALJ found that Plaintiff is capable of performing past relevant work as a medical clerk as it

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 416.967(a), 404.1567(a).

is generally performed (Tr. 22). Alternatively, the ALJ determined that other jobs exist in significant numbers in the national economy that Plaintiff could perform including receptionist, data entry keyer, and billing clerk (Tr. 23-24). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 24). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d).

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff asserts that the ALJ's RFC is unsupported by substantial evidence (Doc. 21 at 10-12). Second, Plaintiff argues that the ALJ's Step Four determination is legally and factually flawed (*Id.* at 12-14). Third, Plaintiff asserts that the Commissioner failed to sustain his burden at Step Five (*Id.* at 14-15). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. RFC**

Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and

physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must

assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the

medical records, observations of treating physicians and others, and an individual's own

description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting

*McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To

determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent

of the claimant's impairments to determining the kind of work the claimant can still do despite

his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is

the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to

establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations

omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704

(quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in

*Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC,

and the ALJ should obtain medical evidence that addresses the claimant's ability to function in

the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000)

(per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is

"required to consider at least some supporting evidence from a professional." *Id. See also*

*Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary

responsibility for determining a claimant's RFC and because RFC is a medical question, some

medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390

F.3d at 591.

As previously discussed, the ALJ determined Plaintiff has the RFC to perform sedentary

work with the following limitations (Tr. 18). She can lift or carry up to ten pounds occasionally

and lift or carry less than ten pounds frequently (*Id.*). She can stand and/or walk for two hours

out of an eight-hour workday and sit for six hours out of an eight-hour workday (*Id.*). She

should never climb ladders, ropes, and scaffolds, and can occasionally climb ramps and stairs

(*Id.*). She can occasionally balance, stoop, kneel, crouch, and crawl (*Id.*). She should never

work at unprotected heights, with moving mechanical parts, or in vibration (*Id.*).

First, Plaintiff argues that the ALJ failed to properly include his Psychiatric Review

Technique ("PRT") findings that Plaintiff had mild limitations in several areas of mental

functioning in his RFC determination (Doc. 21 at 10). At Step Two, the ALJ conducted an

extensive review of Plaintiff's alleged mental health impairments, ultimately finding Plaintiff's

depression and anxiety not to be severe impairments (Tr. 14-16). In doing so, the ALJ

determined that Plaintiff has mild limitations in the areas of understanding, remembering, and

applying information; interacting with others; maintaining concentration, persistence, or pace;

and adapting or managing oneself (Tr. 14-15). Plaintiff correctly asserts that an ALJ is required

to consider all medically determinable impairments, including non-severe impairments when

determining his RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one

impairment. We will consider all of your medically determinable impairments of which we are

aware, including your medically determinable impairments that are not 'severe,' as explained in

§§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

*See also Givans v. Astrue*, No. 4:10-CV417-CDP, 2012 WL 1060123, at \*17 (E.D. Mo. Mar. 29,

2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's impairments to

be severe, the error was harmless because the ALJ found other severe impairments and

considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC). The ALJ did not include any non-exertional limitations in the RFC (*See* Tr. 18). However, the ALJ did explain that the limitations identified under the PRT are not a residual functional capacity assessment but are used to rate the severity of mental impairments at Step Two and Step Three of the sequential evaluation process (Tr. 15). Indeed, "mild limitations in daily living activities, social functioning, and with concentration, persistence, and pace do not require a corresponding RFC limitation as Plaintiff suggests." *Taylor v. Berryhill*, No. 417CV01050DGKSSA, 2018 WL 5410977, at *3 (W.D. Mo. Oct. 29, 2018). *See also* SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996) (explicitly distinguishing the PRT and RFC analyses).

Plaintiff next argues that Plaintiff's physical functional limitations are unsupported by substantial evidence (Doc. 21 at 11). Specifically, Plaintiff apparently asserts that the ALJ improperly relied on the opinions of Dr. Denise Trowbridge, M.D. ("Dr. Trowbridge") and Dr. Daryl Thomas, M.D. ("Dr. Thomas") (*Id.* at 12). Instead, Plaintiff argues, the ALJ "should have obtained an opinion as to [Plaintiff's] functional limitations from a consultative examining physician or a treating physician" (*Id.*). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*¸ 829 F.3d 926, 932 (8th Cir. 2016). Regardless, the Court finds that the ALJ properly considered the medical opinion evidence from Dr. Trowbridge and Dr. Thomas and that another consultative examination was not warranted.

First, the ALJ considered the November 2015 opinion of state agency non-examining physician, Dr. Trowbridge, affording it "partial weight" (Tr. 21, 64-66, 76-78). As noted by the ALJ, Dr. Trowbridge limited Plaintiff to less than the full range of light work and determined that Plaintiff can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently;

8

can stand and/or walk up to four hours in an eight-hour work day; can sit about six hours in and eight-hour workday; can occasionally climb ramps and stairs, ladders, ropes, and scaffolds; occasionally crouch and crawl; frequently balance and stoop; must avoid concentrated exposure to wetness; and must avoid even moderate exposure to vibration and hazards such as machinery and heights (Tr. 21, 64-66, 76-78). In his detailed evaluation of the opinion, the ALJ concluded, "based on the record," that Plaintiff was more limited than as suggested by Dr. Trowbridge (Tr. 21). Specifically, the ALJ further restricted Plaintiff's ability to stand and/or walk and amount Plaintiff could lift and/or carry (*Id.*). In support of these additional limitations, the ALJ stated, "[l]ifting or carrying more weight could exacerbate the [Plaintiff's] neck and back condition, and standing for more than a couple of hours would reasonably be limited by her hip impairment" (*Id.*). The ALJ also found that the medical evidence supports that Plaintiff should never climb ladders, ropes, and scaffolds (*Id.*). The ALJ additionally indicated that he found no support for this limitation on environmental wetness but that he agreed with Dr. Trowbridge's assessment that Plaintiff can occasionally climb ramps and stairs, occasionally crouch and crawl, and should avoid all vibration and hazards (Tr. 21-22).

The medical evidence of record supports the ALJ's consideration of Dr. Trowbridge's opinion and the limitations included in the ALJ's RFC determination. Treatment records, as noted by the ALJ, indicated normal range of motion, spine nontender to palpation, full range of motion in the neck, pain with lumbar spine range of motion, bilateral positive straight-leg raising, back and hip tenderness, normal gait, faint weak hip abduction, gait abnormality, and reduced biceps and ankle strength (Tr. 19-20, 253, 257, 287, 291, 301, 306, 320, 327, 332, 362, 370, 375, 385, 399). While these findings support some restriction, as determined by the ALJ, the ALJ also correctly evaluated Plaintiff's relatively conservative treatment, improved

symptoms with medication, and substantial activities of daily living. Indeed, Plaintiff was prescribed pain medications and they were largely successful in controlling her pain (Tr. 19-20, 22, 40, 232, 248, 253, 256, 306, 325, 368, 381-83). Plaintiff did not seek any additional treatment (Tr. 286 (declining to participate in physical therapy); 294-95, 396 (limited injection treatment during the disability period); 48, 254, 257, 287, 290, 333, 396 (referral to orthopedics to consider right hip replacement never completed; "right hip is 'not at the point that it needs to be replaced"). The ALJ also properly addressed Plaintiff's activities of daily living finding Plaintiff could drive, do dishes and laundry, vacuum, prepare simple meals and cook, watch television, and read books (Tr. 42-45, 207-09, 214, 219, 221-23, 384, 398). *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility.").

Second, the ALJ gave the November 30, 2016 report of consultative examiner Dr. Thomas "partial weight" (Tr. 22, 396-401). Dr. Thomas, as indicated by the ALJ, opined that Plaintiff "has a disability which prevents her from engaging in employment, but that the expected duration of incapacity would be 6-12 months" (Tr. 22, 400). The ALJ stated that he disagreed with Dr. Thomas' assessment of Plaintiff's inability to work in light of his statement that her impairment would not last more than 12 months, as required under the applicable regulations (Tr. 22). 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). The ALJ explicitly noted that while there were not physical limitations included in Dr. Thomas' opinion, he did consider the specific findings of Dr. Thomas as to Plaintiff's condition (Tr. 22).

Upon review of the report, the Court finds the ALJ's RFC determination is consistent with Dr. Thomas' findings. Dr. Thomas included an evaluation of Plaintiff's functional capacity, noting:

> She is able to walk approximately one block and has to stop secondary to her back and hip pain. She is able to stand for approximately seven minutes and has to rest secondary to her hip and back pain. While sitting she has to periodically alternate positions due to the hip and back pain.

(Tr. 397). Dr. Thomas indicated tenderness along the entire cervical spine and pain in the neck with anterior flexion, posterior extension, and bending the neck to the left or the right (Tr. 399). Dr. Thomas also found full range of motion of the neck (Tr. 399). Dr. Thomas further reported negative straight leg test, 5/5 in strength in all four extremities, and normal gait without limp (Tr. 400). The ALJ noted that Dr. Thomas only examined the Plaintiff once and failed to specific the Plaintiff's actual physical limitations (Tr. 22). *Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) (finding the ALJ properly discounted physician's opinion when the record reflected that physician only examined plaintiff on one occasion and his assessment was largely based on plaintiff's subjective complaints). Furthermore, at the recommendation of Dr. Thomas, a series of x-rays was taken on the same day (Tr. 400). The results from these x-rays were largely normal as follows (1) x-rays of the right hip—"Bone appears deposited in a halo configuration at the base of the head and neck. CT scan could be helpful in further assessment. The join is grossly intact" (Tr. 402); (2) x-rays of the lumbar spine—"Left-side pseudoarthrosis L5-S1. Left hip total arthroplasty in good repair" (Tr. 403); (3) x-rays of the cervical spine—"Straightening curvature. C-spine otherwise intact" (Tr. 404); (4) x-ray of the pelvis—"Total arthroplasty left hip. Iliac horn on the left with a more broad-based bone protrusion on the right ilium. Question of bony deposition in the hip capsule. CT suggested" (Tr. 405). MRIs from earlier in 2016 also

support the ALJ's findings, suggesting only mild cervical spondylosis and moderate osteoarthrosis of the right hip (Tr. 311-17).

Thus, there is an opinion of record as to Plaintiff's physical functional limitations, and the ALJ properly considered it and determined the extent to which it was consistent with medical evidence. The ALJ also considered the report from Dr. Thomas' November 2016 consultative exam and, although not discussed by Plaintiff, an October 2015 consultative exam (Tr. 19-20, 381-386). Furthermore, the ALJ properly considered the medical record as a whole which contained extensive treatment records which provided more than adequate medical evidence of Plaintiff's ability to function in the workplace (Tr. 253-410). In the absence of other medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011). The Court rejects the contention that the ALJ failed to adequately develop the record in this instance. With the medical record adequately developed, the ALJ was not required to order another consultative examination expressly to obtain an opinion as to Plaintiff's functional limitations, and the failure to do so is not cause for reversal. *See KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372-73 (8th Cir. 2016); 20 C.F.R. § 404.1519a(b); *see also Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (The ALJ is required to order further medical examinations only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled).

In conclusion, the Court finds Plaintiffs argument are without merit and that the ALJ's RFC determination is consistent with the relevant evidence of record including the observations of medical providers.

**B. Step Four: Return to Past Work**

Next, Plaintiff argues that the ALJ's Step Four determination is legally and factually flawed (Doc. 21 at 12). The ALJ found Plaintiff could perform her past relevant work as a "medical clerk" as generally performed (Tr. 22-23). In doing so, the ALJ detailed the vocational expert's testimony, specifically noting that: "The vocational expert testified that the DOT describes the job of medical clerk under the DOT number 205.362-030 and that it is generally performed at the sedentary exertional level, but that the [Plaintiff] actually performed it at the light exertional level" (Tr. 23).

First, Plaintiff asserts that the vocational expert identified the job of "outpatient admitting clerk" (DOT 205.362-030) not "medical clerk" as relied upon by the ALJ in his decision (Doc. 21 at 13). Plaintiff is correct in her assertion that the vocational expert incorrectly identified the position as "medical clerk" but Plaintiff fails to note that the vocational expert provided DOT number 205.362-030 and the ALJ relied on the same DOT number in his opinion (Tr. 23, 50). Also, Plaintiff's attorney did not raise any objection to, or questions regarding, the vocational expert's testimony about this matter (Tr. 54-55). Therefore, this remand is not warranted as Plaintiff has failed to show how the outcome would have been different if the error had not occurred (Tr. 23). *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [the Plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred.").

Second, Plaintiff argues that a different job, medical assistant (DOT 079.362-010), applies to her past work as her past work was actually performed at the light exertional level (Doc. 21 at 13). Here, the ALJ asked the vocational expert to assume a hypothetical person limited to a range of light work with Plaintiff's RFC (Tr. 53). In response, the vocational expert

testified that the hypothetical individual could perform Plaintiff's past work not as it was actually performed but how it was generally performed (*Id.*).  The ALJ specifically highlighted this testimony, that Plaintiff would not be able to perform this work as it was actually performed, accepted the vocational expert's testimony, and found Plaintiff to be able to perform her past relevant work as a medical clerk as it is generally performed (T. 23).  "The ALJ is permitted to rely on a vocational expert in order to determine whether a claimant can perform his past relevant work, either as he performed it or as it is performed in the national econom[y]." *Girshner v. Berryhill*, No. 4:16-CV-03451-NKL-SS, 2017 WL 2859930, at \*8 (W.D. Mo. July 5, 2017).  Having found, as addressed above, the ALJ's RFC determination to be supported by substantial evidence, the ALJ did not err by relying on the testimony of the vocational expert that Plaintiff could perform her past work as a medical clerk as it is generally performed.  Therefore, the Court finds the ALJ's assessment at Step Four to be supported by substantial evidence.

**C. Step Five: Perform Other Work**

Plaintiff asserts that the Commissioner failed to sustain his burden at Step Five (Doc. 21 at 14-15).  But, in this case, the evaluation process ends at Step Four because the ALJ appropriately found the Plaintiff could perform her past work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014) ("The evaluation process ends if a determination of disabled or not disabled can be made at any step").  In other words, the burden does not shift to the Commissioner to prove Plaintiff could perform other work, and the Court can affirm on that basis alone.  Nevertheless, substantial evidence supports the ALJ's findings at Step Five.

Plaintiff argues that the ALJ improperly determined that Plaintiff had transferable skills (Doc. 21 at 14-15). At Step Five, the ALJ considers the Plaintiff's RFC, along with Plaintiff's age, education, and work experience, to determine whether Plaintiff can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). Under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, an individual of Plaintiff's age[3] and education level, with a sedentary RFC, is considered "disabled" unless she has transferable skills. A claimant has transferable skills "when the skilled or semi-skilled work activities [Plaintiff] did in the past can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). "Transferability is most probable and meaningful among jobs in which—(i) The same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved." 20 C.F.R. § 404.1568(d)(2).

The Court finds that the ALJ's decision at Step Five is supported by substantial evidence. Based on the vocational expert's testimony, the ALJ determined that Plaintiff has the transferable skills of data entry, billing work, math, answering phones and customer service, and scheduling appointments (Tr. 23). Plaintiff asserts that these skills are not transferable skills because they are "extremely basic skills that anyone, given a few months, can master" (Doc. 21 at 15; Doc. 29 at 8). However, the level or complexity of skill is not at issue but whether the skills were transferable to other similarly skilled jobs. SSR 82-41, 1982 WL 31389, at *6 (1982) ("[W]here job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from

---

[3] Plaintiff was born on February 26, 1961, and thus was an "individual approaching advanced age (age 50-54)" at the date of her amended alleged disability onset date in October 2013 and an individual of advanced age (age 55 or older) at the date of the ALJ's decision in July 2017. 20 C.F.R. §§ 404.1563, 416.963.

past work experience can usually be accomplished with very little, if any, vocational adjustment . . . .").

Here, the ALJ explicitly and properly determined, relying on the vocational expert's testimony, that the jobs of receptionist, data entry keyer, and billing clerk would require skills acquired in the Plaintiff's past relevant work but no additional skills (Tr. 24). *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (holding that an ALJ's reliance on a vocational expert's testimony regarding transferability of skills "is explicitly allowed by [the regulations].").

Finally, Plaintiff briefly argues that because the ALJ's RFC is flawed, the hypothetical to the vocational expert is similarly flawed, and thus the conclusions at Step Five are erroneous (Doc. 18 at 9). However, as previously addressed, the Court finds the ALJ's RFC determination to be consistent with the relevant evidence of record. Accordingly, as the ALJ appropriately included the restrictions as indicated in his RFC determination in the hypothetical question to the vocational expert, the Court finds that the hypothetical which the ALJ submitted to the vocational expert was proper, the ALJ properly relied on the vocational expert's testimony that there were jobs existing in significant numbers which Plaintiff could perform, and Plaintiff's arguments to the contrary are without merit. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ.").

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and

Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 20th day of September, 2019.

       /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE